**IN THE UNITED STATES DISTRICT COURT FOR THE SIXTH JUDICIAL DISTRICT**

**STATE OF COLORADO, CIVIL DIVISION**

CASE NO -

**CARL LLOYD SHEELER**

    **Plaintiffs**

                         **EMERGENCY EX-PARTE**

                         **MOTION FOR TEMPORARY**

                         **RESTRAINING ORDER,**

**U.S. BANK, NATIONAL ASSOCIATION**

**AS TRUSTEE OF CABANA SERIES V TRUST ("CABANA")**

**AS TRUSTEE OF VRMTG ASSET TRUST ("VRMTG")**

**SHELLPOINT SERVICER FOR THE TRUSTS**

**SECURITY NATIONAL SERVICING NATIONAL CORPORATION ("SNSC")**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEM ("MERS")**

**RELIABLE LENDING SERVICES, LLC ("RELIABLE")**

**ALPINE BANK**

**ET AL**

    **Defendants**

    **PLAINTIFF 'S EMERGENCY EX-PARTE MOTION FOR TEMPORARY**
    **RESTRAINING ORDER, TEMPORARY**

**PLAINTIFF HAS NO ADEQUATE REMEDY AT LAW. FORECLOSURE WEDNESDAY JAN. 22, 2025 NOTICE OF MOTION. The undersigned moves this Court, at such date and time the matter may be heard**

<u>VENUE, JURISDICTION AND PARTIES</u>

1.    Venue is properly before this Court. Most of the events, circumstances,

damages and denials of rights described herein took place in La Plata County, Colorado.

2.     Defendants, not in their individual capacities, but as lenders or servicers does business in La Plata County, Colorado. The lenders either directly or through their servicers claim to be Endorsee of the Note and Assignee of the Deed of Trust, and therefore successor in interest to the originator of the loan named as follows: US Bank (Cabana Series V) incorporated in Delaware with a physical address of 323 5th Street, Eureka, CA 95501 (the same address as SNSC – a servicer for Cabana Series V) and (VRMTG Asset Trust) also incorporated in Delaware with a physical address of 888 Seventh Avenue, 10th Floor, New York, NY 10019. Shellpoint is a Servicer of the two USBank (Cabana and VRMTG) and has a physical address of 55 Beattie Pl Suite 500, Greenville, SC 29601. MERS is widely used by entities such as the two USBank as Trustees that pool/aggregate their loan portfolios by tracking individual notes held. Reliable Lending Services, LLC acquired a note originated by Alpine Bank. Reliable's physical address is 1999 Broadway Suite 3100, Denver, CO 80202 which claims to be Endorsee of the Note and Assignee of the Deed of Trust, and therefore successor in interest to the originator of the loan, Alpine Bank. Alpine Bank has a physical address of its headquarters is 1099 Main Avenue, Durango, CO 81301. Alpine Bank was the originator of a HELOC loan provided to the Plaintiff and subsequently sold to Reliable.

3.     Plaintiff and BK Petitioner Carl Lloyd Sheeler owns the property in question located at 2725/2671, CR 250, Durango, C0 81301 located in La Plata County. Mr. Sheeler is facing imminent harm and loss of his home this Wednesday January 15, 2025. The Instruments mentioned were recorded in La Plata County, Colorado.

The original loans were mortgages to Carl Lloyd Sheeler now serviced by Shellpoint. Reliable serves as its own servicer and has never produced a mortgage statement nor correspondence since acquiring Alpine Bank's HELOC note.

4.      Legal Description of the property is:  Public Record of La Plata County, Colorado.  (See Exhibit)

## GENERAL ALLEGATIONS

5.      This is an action brought by Plaintiff/Petitioner for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages and to set aside the Judicial Judgment of Foreclosure due to fraudulent or misleading documents being filed into the court. The case of Plaintiff/Petitioner Carl Lloyd Sheeler is one of the most egregious cases of wrongful foreclosure ever before the court.

6.      In particular, USBank as Trustee(s) as well as its servicers, SLS, Shellpoint and SNSC knowingly made false claims and committed fraud on the Colorado District and Bankruptcy Courts:

a. Knowingly omitted stipulation agreed to with the Petitioner by claiming a judgment lien results in no equity and as such lifts the stay and clears the path to foreclose while knowing Petitioner was bringing action with the lienholder.

b. On the one hand USBank claimed since 2020 no forbearance was provided by it or its servicers when the CFPB, RESPA and CARES Act ***mandated*** forbearance be offered to borrowers claiming to be impacted by the COVID-19. USBank claimed it had conducted a thorough record review and no forbearance was extended.

c. Further, it claimed that the Petitioner had not submitted the paperwork to request forbearance when the standard was telephonic request. USBank had indicated the Petitioner was in default while in forbearance which had an adverse impact on the Petitioner's credit and access to and approval from other lenders.

d. On the other hand, USBank acknowledged it had received a request and approved a forbearance extension in a letter introduced as evidence by the Petitioner; however, never extended streamlined loan modification options which should have occurred in June 2021.

e. This acknowledgment then means all efforts to foreclose in the past and present were illegal and should be null and USBank should be prevented to foreclose and the Court should sanction USBank as Trustees, be required to forfeit arrears based upon its unclean hands and pending a hearing whether USBank as Trustees have standing, which the Petitioner has an expert witness to testify ***USBank does not have standing***.

f. USBank as Trustees and its servicers have been cited in thousands of cases/complaints for the above acts as reported by the CFPB.

g. Plaintiff/Petitioner believes with factual evidence there has been a violation of Colorado statute for Unfair and Deceptive Business Practices in denying the Plaintiff right of Covid forbearance in the case of Alpine Bank and Reliable (Further, neither Alpine Bank nor Reliable provided any communication nor responded to the Plaintiff's request for forbearance). This is also the case for Shellpoint.

In a letter dated May 27, 2020. (Exhibit A) correspondence from Specialized Loan Servicing {"SLS") Plaintiff was given a forbearance agreement and also offered extension. (*SLS was acquired by Shellpoint in May 2024*).

h. To date Shellpoint as well as U.S. Bank have never informed Plaintiff his forbearance expired or is no longer in effect.

i. The **first defense** for wrongful foreclosure is the Petitioner is in active forbearance with no consideration as to the impact on Petitioner 's physical or emotional health as a result of the Defendants' bad faith acts..

### **OBJECTION TO MOTION FOR RELIEF FROM STAY** (Exhibit B)

7.    A **second defense** is in Bankruptcy Case 23-11207 Plaintiff/Petitioner goes into great depth to show that a violation of Federal Rule 60 (b) and 11 USC 105 (a) has been committed by the Bankruptcy Court. To be specific, the subject property consists of three parcels. At present, two of the parcels (Exhibit C) are under contract for $825,000 each. The real estate broker involved in the sale estimates a value of up to $6.1 million for the entire estate. The Bankruptcy Chapter 7 has been discharged and the court ruled that a lien avoidance was granted to set aside for purposes of sale judgement liens of $4,484,599.06 claimed by Berkeley Research Group, LLC ("BRG"), RPA, LLC ("RPA"), Reliable Lending Services, LLC (Reliable). On Page 4 of Exhibit B shows on item 19 that there is a potential profit of $3 million or more if the plaintiff's do not have standing.

8.      This is radically different from the Bankruptcy Judge's view there is no equity by erroneously including the judgment liens contrary to the reason why the Petitioner sought relief by filing for bankruptcy. The Bankruptcy judge fails to acknowledge the judgment liens would be stripped and committed an error per Federal Rule 60 (b) and 11 USC 105 (a) in that there is equity.

9.      A **third defense** and reason for a Temporary Restraining Order is another violation of Federal Rule 60 (b) is the failure of plaintiff's ex to file a quit claim as ruled by the judge divorce of 50% of the subject property to Plaintiff as he had agreed to carry the debt in the real estate.  Now a separate action is being filed to make this possible,

10.      A **fourth defense** is Defendants have filed fraudulent assignments or lack of assignments with the court and committed "Fraud Upon the Court" The Carl Lloyd Sheeler in Bankruptcy Case 23-11207 original purchase was a fraudulent transaction in that the loan was made on stated income. Later, Plaintiff/Petitioner learned the original loan was a predatory loan they would never be able to repay. Mr. Carl Lloyd Sheeler has recently reapplied for a streamlined modifications and has been denied thus far.  Presently, US Banks' loans remain under forbearance. The CARES, Act was designed to take forbearance agreements and later allow a streamlined modification with lenders only permitted to have the same or lower amount of payment prior to the Covid pandemic. This never happened and Plaintiff is alleging a violation of FDCPA. In addition, Defendants state the Plaintiff/Petitioner have failed to file a Financial Instrument Form 3005, 5-3 Form, USC 1441 Form, GAAP form. Also, the original closing statements are missing key disclosures rendering the closing null and void due to Fraud in the Inducement.

The real party in interest is Securitized Trust thus creating a break in the chain of title. This occurred as a result of MERs failures. (Exhibit B)

11.     In addition, the Plaintiff states the following:

*"I had provided and asked for replies to a Qualified Written Request from the servicers and lenders which have largely gone unanswered in violation of numerous federal laws. Tho preliminary reply discovered a lack of initial final disclosures, including but not limited to an affiliated business arrangement disclosure, servicing disclosure statement, escrow account disclosure, initial signed uniform residential loan application, disclosure of credit Scores, and a notice to the home applicant. An inactive MIN (Mortgage identification Number) label on the loan was also identified when checked on their website. **This inactivity raises questions about the securitization of the US Bank as Trustee mortgages and potential fraudulent or suspicious implications**.*

*As U.S. Bank National Association is registered with the SEC, they are required to file an S-3 form and initiate proper steps to perform the foreclosure action to maintain REMIC (Real Estate Mortgage Investment Conduit) status. The endorsement in blank is an unqualified endorsement, and thus **US Bank as National Association received warranties as the subsequent holder in due course as specified in Section 3-417 of the Uniform Commercial Code**.*

*The mortgage might have been paid off when it was sold to another company, as the lien was technically satisfied. And per provision 23 of the contract documents, the originating lender must put the property title back in the homeowner's name upon payment of the outstanding amount secured by the security instrument. Provision 23 in the contract documents stated the following:*

*Upon payment of all sums secured by the security instrument, lender shall release the security instrument." As this mortgage was sold, it was potentially paid in lull, which could imply an accord and satisfaction has occurred on this mortgage, with the assignment on record using the actual documents themselves as proof.*

*Additionally, the lack of disclosures led to rescission rights, as the three-day right to cancel was never activated due to the lack of full disclosures. **Suggested violations include TILA (Truth in Lending Act), RESPA, FDCPA (Fair Debt Collection Practices Act), etc. Expert advice suggests a reasonable value for all violations could be $2 million per incident and loan if not greater. Though these are only the preliminary results, and a comprehensive audit is upcoming.**"*

12.     The Plaintiff/Petitioner believes due to numerous FDCPA violations he is claiming numerous damages such as detrimental reliance, unconscionability, breach of good faith and fair dealing, conversion, etc.

13.	In order to prove a case of violation of Federal Rule 60 (b) Colorado requires: Colorado state courts have articulated a standard which gives the trial court quite a bit of latitude in its determination as to whether dismissal for fraud upon the court is warranted. Naturally, the appellate court will defer to a trial court's expertise when it comes to determinations of credibility and good faith, and these orders are generally reviewed for abuse of discretion. Appellate courts may be less deferential where the trial court's determination is based upon a paper record, rather than an evidentiary hearing.

14.	However, while evidentiary hearings are clearly favored, there is "no rule, statute, or case" that requires an evidentiary hearing to be held when a motion to dismiss for fraud is filed. When finding that dismissal is the appropriate sanction for fraud, the Court must conclude that the Defendant has produced clear and convincing evidence of a fraud, and an order granting Defendant's motion should contain express written findings demonstrating that the trial court has carefully balanced the equities and supporting the conclusion that the moving party has proven, clearly and convincingly, that the non-moving party implemented a deliberate scheme calculate to subvert the judicial process.

15.	Accordingly, a party who prevails on a Motion to Dismiss for Fraud Upon the Court should submit a proposed order which includes express factual findings and in-depth references to the factual record in order to reduce the likelihood of reversal upon appeal. In other words, the order should look like it was written by a federal judge granting summary judgment.

**Legal Standard:**

16.     In general, a trial court has a duty and an obligation to dismiss a cause of action based upon fraud. The reasoning behind the harsh sanction of dismissal is the principle that a party who has been guilty of fraud or misconduct in the prosecution of a civil proceeding should not then be permitted to continue to employ the very institution it has undermined to achieve its ends. This is clearly USBank as Trustees and their Servicers acts. But what type of misconduct rises to the level of fraud? It can and should warrant a dismissal for fraud, where the Lender Plaintiff's (and/or Chapter 7 BK Trustees or their agents) through *misrepresentations and omissions* go to the heart of its claims.

17.     Or, alternatively put, "when a party lies about matters bearing directly on the issue of losses, dismissal is an appropriate sanction. Courts are generally disinclined to grant such a motion where you catch a Lender Plaintiff is lying about their claims. When a court errs in mistakenly applies an erroneous judgment lien that causes him to lift the stay of the Lender Plaintiff it should be remedied quickly to stop the foreclosure that is pending in days.

18.     However, the judgment lien should not have been applied and should be stripped as it abuses the Court's discretion in failing to dismiss Lender Plaintiffs case for fraud upon the court. Counsel for US Bank as Trustee stated *"they looked exhaustively everywhere and found no evidence forbearance had been applied for by the Plaintiff."*

19.     Evidence shows that forbearance had been provided and it was time to request by calling in for an extension.

The first indiscretion was suggesting covid related pandemic required forms and approval which is counter to RESPA/CARES Act mandated if a borrower claims he was impacted by Covid to grant forbearance. In fact, the mandate allowed for a year's worth of forbearance and then provided that lenders could extend forbearance.

20. US Bank as Trustees' servicers offered covid related forbearance through May 2024 and in the case of the Plaintiff Petitioner they failed to ever notify him in writing that his forbearance had ended. Yet, contemporaneously they endeavored during the entire period to foreclose on the Plaintiff Petitioner's property. A decision to dismiss Lender Plaintiff's case for fraud upon the court is proper if Lender Plaintiff or counsel provides false or misleading statements or knowingly omits evidence under oath.

21. In the case of Alpine Bank contrary to RESPA/CARES Act rules not only did they not offer forbearance but they also did not address the Plaintiff Petitioners request for forbearance in violation of guidelines as was making no effort to contact the borrower there was a change in ownership of the HELOC.

**22.** Finally, and perhaps as important the ***Petitioner Plaintiff was never sent a monthly mortgage statement including as of today***. Reliable never responded to a mandated Qualified Written Request as required by statute. The note owner expressed to the consumer law attorney, Blair Drazic, representing the Plaintiff Petitioner ***"Sue me for not responding to the written request."***

23.     Relevant factors in a Court's analysis should be (1) similarity (or dissimilarity) of non-disclosed fact; (2) whether nondisclosure involves most or all of Lender Plaintiff's claimed losses; and (3) The actual amount of loss if Lender Plaintiff investments are derisked with insurance against default to mitigate its losses.

24.     The ultimate question is whether the Lender Plaintiff could have credibly inadvertently missed or omitted or falsely made unsubstantiated information central to their claim. Motions such as the one filed here should be used sparingly, but when it is clear the Plaintiff Petitioner dealing with a Lender Plaintiff that has no regard for the truth, and is simply trying to manipulate the system it should be sanctioned.

25.     Lender Plaintiffs' counsel would be well advised to take the time to meet with their clients and ensure they fully disclose everything. After all, even if their Motion is denied, client's credibility is shot.

26.     U.S. Bank, National Association has a horrible reputation and was recently fined by the CFPB.  Servicers SLS and Shellpoint have been on the receiving end of CFPB enforcement due to 1,00's of complaints filed with CFPB.

*WASHINGTON, D.C. - The Consumer Financial Protection Bureau (CFPB) today filed a proposed order that would require U.S. Bank, National Association to pay a $3.95 million penalty for submitting error-riddled mortgage loan data to federal regulators. In October 2023, the CFPB sued the nonbank mortgage company for violating both the Home Mortgage Disclosure Act (HMDA) and a 2019 CFPB order. In addition to the civil money penalty, if entered by the court, today's proposed stipulated judgment and order will require Specialized Loan Servicing to regularly audit, test, and correct the company's HMDA data.*

"Specialized Loan Servicing is a repeat offender that has ignored requirements to submit accurate data that help federal regulators maintain a fair home lending market," said CFPB Director Rohit Chopra. "The CFPB is making sure that Specialized Loan Servicing pays for their actions as well as institutes guardrails to prevent future violations."

The CFPB is proposing today's order because Specialized Loan Servicing has submitted incorrect mortgage data in violation of HMDA, the 2019 order, and the Consumer Financial Protection Act. Freedom Mortgage's HMDA data submission for 2020 contained widespread errors across numerous data fields because of systemic problems with its compliance management systems. The company's HMDA violations occurred while Specialized Loan Servicing was subject to the 2019 law enforcement order.

**Enforcement Action**

Under the Consumer Financial Protection Act, the CFPB has the authority to take action against nonbank financial institutions, including non-bank mortgage companies, for violating consumer financial protection laws, regulations, and orders, such as the CFPB's 2019 order. If entered by the court, the CFPB's proposed stipulated judgment and order will require Specialized Loan Servicing to:

- **Prevent future HMDA violations:** The order imposes injunctive relief designed to prevent future violations of the law by requiring Specialized Loan Servicing to regularly audit, test, and correct the company's HMDA data.
- **Pay a $3.95 million fine:** The order requires Specialized Loan Servicing to pay a $3.95 million penalty to the CFPB's victims relief fund.

Since 2021, the CFPB has dramatically increased its focus on repeat offenders, including entities and individuals that violate CFPB orders. The CFPB established a Repeat Offenders Unit to ensure that companies are not repeatedly violating the law. The agency has taken a substantial number of law enforcement actions against large repeat offenders. In addition, the CFPB finalized a rule to create a new registry that will compile consumer protection law enforcement orders by federal, state, and local law enforcement agencies.

## FIRST CAUSE OF ACTION

### SET ASIDE JUDGMENT OF FORECLOSURE DUE TO LACK OF ASSIGNMENT, FAILURE TO FILE CORRECT IRS FORMS, SUPPLY DISCLOSURES AT CLOSING, FAILURE TO ALLOW MODIFICATION OR PURCHASE OF PROPERTY

### RUINING MR. SHEELER'S CREDIT AND REPUTATION

A.      **No Defendant Has Standing to Foreclose**

27.     Petitioner Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

28.     An actual controversy has arisen and now exists between Petitioner Plaintiff and Lender Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends Defendants, each of them, do not have an equitable right to foreclose on the Property because Defendant's, each of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to the court they have a valid interest as a real party in interest to the underlying Deed of Trust. The real party in interest is a Securitized REMIC Trust. Also, through violations of Fed. Rule 60 (b) Defendants have a cause of action for violations of Bankruptcy fraud and FDCPA by denying the right to a stream lined modification on or about June 2021when residential interest rates were below 3% and the claimed arrears were due to forbearance and not default! Thus, the purported power of sale, or power to foreclose judicially, by the above specified Defendant's, each of them, no longer applies. Defendants are attempting to wrongfully foreclose in La Plata County, Colorado and denying their rights under the FDCPA of the original loan amount more than covers any losses.

29.     Plaintiff requests this Court find that the purported power of sale contained in the Deed of Trust is a nullity by operation of law, because Plaintiff's' actions in the processing, handling and attempted foreclosure while he was contemporaneously in forbearance of these deeds involved numerous fraudulent, false, deceptive and misleading practices, including, but not led to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, each of them.

*Petitioner Plaintiff further requests title to the Real Property remain in Plaintiff's possession during the pendency of this litigation, and deem that any attempted sale of the Real Property by the Defendant Lenders, Servicers, their agents and counsel is "unlawful and void". Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law.* Therefore, Defendant US Bank as Trustees cannot establish that it is entitled to assert a claim in this case much less arrears. For this reason, as well as the other reasons set forth herein below, US Bank as Trustees cannot transfer an interest in Real Property, and cannot recover anything from Defendants with unclean hands.

30.     *Lender Defendants, each of them, through their actions alleged above, claim the right to illegally commence foreclosure sale of Defendant's Real Property under the Mortgage/Deed of Trust on the Real Property via an in-Rem action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Defendant's great and irreparable injury in that Real Property is unique*.

31.     *The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff.* Plaintiff will not have the beneficial use and enjoyment of his home which will be wrongfully foreclosed on and is now seeking damages.

32.     Petitioner Plaintiff spoke to US Bank as Trustees about a streamlined modification and was informed he was in an "active agreement" and needed more documents. and continues promissory estoppel.

33.     Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to him and has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because Real Property is inherently unique and it will be impossible for Defendant to determine the precise amount of damage he will suffer.

34.     Plaintiff served honorably as a USMC combat officer with service in support of Desert Storm and was diagnosed with PTSD.  Further, the activities of the lenders and servicers has forced him to seek counseling and therapy since 2020 to the present.

## SECOND CAUSE OF ACTION
(Against Lender Defendants for an Accounting)

35.     Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-34 above, as if set forth fully herein.

36.     As a result of Defendants' actions, an accounting is necessary so that Plaintiff may be reimbursed for all improper excessive charges and misapplied payments.

## THIRD CAUSE OF ACTION

(Against Lender Defendant's for Breach of Contract)

37.     Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-36 above, as if set forth fully herein.

38.     There was a written forbearance agreement the Lender Defendants were bound and enforced by CFPB. That contract is attached hereto as Exhibit B (the "agreement"). Plaintiff contacted US Bank as Trustees through their Servicers and was informed he would get a streamlined modification that would put him in a better financial position.

39.     The Plaintiff had requested forbearance of the Alpine Bank loan and they were non-responsive. Nevertheless, Alpine reported to the Credit Bureaus that the Plaintiff was paying as agreed which is also confirmed by Alpine's own statements.

40.     An agreement (forbearance) was reached but there was a breach of contract. A **breach of contract** occurs when one party fails to perform any of the terms outlined in a contract. Whether the contract is oral or written, a breach can take various forms, including:

1. **Partial Breach**: This occurs when a party fails to perform an immaterial provision of the contract.

2. **Material Breach**: In this case, one party's failure to perform their obligations significantly impacts the value of the contract.

3. **Anticipatory Breach**: When one party indicates they won't fulfill their contractual obligations before the performance is due, it's called an anticipatory breach.

4. **Fundamental Breach**: A total breakdown of the material provisions of a contract may be referred to as a fundamental or repudiatory breach. ***It can relieve the aggrieved party of their own obligations under the contract and give him the right to sue for damages[1].***

Remedies for breach of contract aim to make the injured party whole, rather than punishing the breaching party.

- **Compensatory damages**

- **Restoration**

- **Rescission**

- **Specific performance**

- **Injunction**

41.    Plaintiff 's substantially performed all of his duties under the Loan agreement but the Lender Defendants wrongfully prevented Plaintiff's right to a streamlined modification.

42.    Defendants breached his right to a stream lined modification at a considerably lower interest rate while preventing him to find an alternative lender due to their public notice of foreclosures.

43.    The bad acts include but not limited to wrongfully and fraudulently pursuing foreclosure while the Plaintiff was in forbearance or failing to offer forbearance.

44. As a result of Defendants' actions, Plaintiff suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

## FOURTH CAUSE OF ACTION

(Against Lender Defendants for Breach of the Implied Covenant of Good Faith and Fair Dealing)

45. Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-44 above, as if set forth fully herein.

46. There was a written loan contract in the form of a mortgage that the Lender Defendants were bound. That contract is attached hereto as Exhibit C (the "Loan Agreement").

47. The Lender Defendants were bound by the written Loan Agreement that carries with it a basic duty to engage in good faith and fair dealing. Defendant Carl Lloyd Sheeler did not get a mortgage agreement and did not receive the proper notices or paperwork at closing plus proper IRS forms 3005, 5-3 Form, USC 1441 Form, GAAP are missing.

48. Defendants acted in bad faith and frustrated the purpose of the Loan Agreement in numerous ways, including but not limited to wrongfully and fraudulently and without proper notification to Plaintiff.

49. As a result of Defendants' actions, Plaintiff suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

## FIFTH CAUSE OF ACTION

(Against Lender Defendants for Promissory Estoppel)

50.     Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraph 1-49 above, as if set forth fully herein.

51.     The Lender Defendants made numerous promises to Plaintiff, including promises made through counsel, then improperly reneged on, including a promise to allow a streamlined modification following or while in forbearance. Plaintiff reasonably relied on these promises.

52.     The Lender Defendants failed to comply with any of those promises.

53.     As a result, Plaintiff's property was repeatedly and improperly threatened with foreclosure with weekly public notices of a public auction reported by the County Public Trustee that was detrimental to the rent duration and market value of rents and the properties itself receiving dozens of emails and phone calls offering to buy the home in cash at significantly lower distressed amounts versus fair market value.

54.     Plaintiff's credit was compromised, and he was forced to expend unnecessary money to try and salvage his home, thus he suffered severe damage to include, but not limited to time and talent to develop new sources of wealth and work incomes (opportunity costs). The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

## SIXTH CAUSE OF ACTION

(Against Lender Defendants for Negligence)

55.     Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-54 above, as if set forth fully herein.

56. The Lender Defendants to include their Servicers were negligent in how they held and serviced the Loan Agreements and, in the steps, they took toward foreclosure on the Property.

57. As a result, Plaintiff was severely damaged. The Property was damaged, and it was also put under lien. All the damages in this case in some way trace back to these instances of Defendants' negligence.

58. As a result of Defendants' actions, Plaintiff suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

## SEVENTH CAUSE OF ACTION
(Against Lender Defendant for Concealment)

59. Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-58 above, as if set forth fully herein.

60. Defendants failed to provide Plaintiff and his attorneys any specific amount of alleged default or any intent to accelerate their claims and proceed with foreclosure actions without proving the alleged debt valid such that the Defendant was/is the rightful lender and failing to provide appropriate opportunity for Defendant to cure.

61. Defendant did not know this nor could he have discovered it.

62. On information and belief, Defendants intended to deceive Defendant with their concealment ***so he would lose his home as well as his retirement*** allowing the Defendants to profit thereby.

63. On information and belief, Defendants did not intend to fulfill their obligations to assist the Plaintiff in trying to prevent any foreclosure but rather were taking great measures to cause it to intentionally happen.

64.     This required a willingness to violate numerous rules and regulations to try and protect a homeowner as outlined in the Colorado statutes, the CFPB Regulations including but not limited to Regulation X and the Guidelines established by the FTC as well as other state and federal entities. Had Defendants not concealed information from him, Plaintiff could have behaved differently, including seeking options other than bankruptcy to preserve his credit and save his home and retirement such as curing minor arrears directly with the lenders and servicers, which arrears were grossly overstated due to the financial benefit to foreclose versus offering a streamlined loan modification and favorable interest rates. As an example, the period beginning with the 2020 covid pandemic to the present the value of public stocks is considerably higher or reinvesting in his professional services company instead of fighting off the desire of the Defendants to foreclose.

65.     Plaintiff has repeatedly been scheduled to lose his property and nest egg at auction as a result of Defendants' wrongful actions toward foreclosure.

66.     Defendants' concealment was a substantial factor in causing Plaintiff harm. Defendants' actions were willful, malicious, fraudulent, and carried out with reckless disregard to Plaintiff's rights and interests.

67.     As a result of Defendants' actions, Plaintiff suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

### EIGHTH CAUSE OF ACTION

(Against Lender Defendants for False Promise)

68.     Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-67 above, as if set forth fully herein.

69.     The Lender Defendants promised the Plaintiff, inter alia, he could work with them to make a loan modification or allow him to purchase or sell part or the entire estate outright. Despite the pandemic beginning in 2020 they were more interested in their unfair enrichment than his home and retirement he worked 30+ years as a USMC combat officer and a business owner to make sacrifices so he could retire comfortably.

70.     Defendants did not intend to keep these promises when they made them. Plaintiff reasonably relied on these promises. Defendants did not keep these promises. Plaintiffs' property was repeatedly ever week advertised as a distress property set to auction as a result.

71.     As a result of Defendants' actions, Plaintiff suffered severe fiscal, physical and emotional damages in the middle of the pandemic and thereafter. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

### NINTH CAUSE OF ACTION
(Against Lender Defendant for Fraud, Violation of Fed. Rule 60 (b)), 11 U.S.C. 105 (a)

72.     Plaintiff   restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-71 above, as if set forth fully herein.

73.     Defendants failed to provide Plaintiff and his attorneys any specific amount of alleged default or any intent to accelerate their claims and proceed with foreclosure actions without proving the alleged debt valid, failing to provide appropriate opportunity for Plaintiff to cure.

74.     Plaintiff did not know this nor could he have discovered it. On information and belief, Defendants intended to deceive Plaintiff   with their concealment so he would lose home and retirement while the Defendants would profit thereby.

75.     On information and belief, Defendants did not intend to fulfill their obligations to assist the Plaintiff in trying to prevent any foreclosure but rather were taking great measures to cause it to intentionally happen, even if it required violating numerous rules and regulations to try and protect a homeowner as outlined in the Colorado Code, the CFPB Regulations including but not limited to Regulation X and the Guidelines established by the FTC among other federal and state agencies. Had Defendants not concealed information from him, Plaintiff could have behaved differently, including seeking options other than bankruptcy to preserve his credit and save his home and retirement such as curing any minor arrears directly with the lender, which were grossly overstated in part because the Defendants knew that most ordinary homeowners would not fight back; especially during the pandemic in 2020 and 2021.

76.     Plaintiff has repeatedly been scheduled to lose his property and his nest egg at auction as a result of wrongful actions toward foreclosure. Defendant's 'concealment was a substantial factor in causing Plaintiff' harm.

77.     Defendant/s 'actions were willful, malicious, fraudulent, and carried out with reckless disregard to Plaintiff's rights and interests.

78.     As a result of Defendants' actions, Plaintiff suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

## TENTH CAUSE OF ACTION

(Against Lender Defendants for Negligent Misrepresentation)

79.     Plaintiff   restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-78 above, as if set forth fully herein.

80. Defendants represented to Plaintiff, inter alia, he could get a loan modification to avoid foreclosure while in forbearance or claiming no forbearance had been offered or requested.

81. Plaintiff reasonable reliance on that representation caused him to suffer severe hardship, financial, physical, emotional and otherwise, when they were attempting to foreclose anyway.

82. As a result of Defendants' actions, Plaintiff suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000.

## ELEVENTH CAUSE OF ACTION
(Against All Defendant's for Detrimental Reliance)

83. Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-82 above, as if set forth fully herein.

84. Plaintiff detrimentally relied on Defendant to allow a modification in accordance to the CARES ACT during Covid 19.

85. Plaintiff was harmed in that sale in that the property has been repeatedly and improperly put up for auction weekly.

86. Plaintiff would have attempted to tender the amount of the secured indebtedness but was excused from so tendering because Defendant willfully oppressive actions hindered him from so doing in a fair manner. They demanded far more than they were owed and refused to negotiate. Moreover, it was their own negligence that caused the indebtedness in the first place.

87. As a result of Defendants' actions, Plaintiff has suffered severe damages. The precise extent of such damage is presently unascertained but, upon information and belief, it is not less than US $2,000,000, and his property and nest egg are now at risk of being lost in a wrongful foreclosure auction.

## TWELTH CLAIM FOR RELIEF
## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
## 15 U.S.C. §§ 1692 -1692p
## (Against All Defendant's)

88.     Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-87 above, as if set forth fully herein.

89.     Each US Bank as Trustees and their servicers, Reliable and Alpine Bank, et al, account obligations were a "debt" within the meaning of FDCPA, 15 U.S.C. section 1692a (5). Because he was allegedly obligated to pay the account obligation, Plaintiff was a "consumer" within the meaning of FDCPA, 15 U.S.C. section 1692a (3).

90.     The US Bank as Trustees and their servicers as well as Reliable et al either bought or was assigned to et al debt.

91.     Since US Bank as Trustees and their servicers, et al, no longer owned the securitized debt it had previously written off, there was nothing for US Bank as Trustees and their servicers, et al to sell or to be assigned. The loan had been securitized into the REMIC Trust T/B/D which was the real party in interest.

92.     Each of said Defendants, at times relevant hereto, was a person who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which was the collection of debts, who regularly collected or attempted to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

93.     Based on said activity or activities, each of said Defendants were a debt collector within the meaning of FDCPA, 15 U.S.C. section 1692.

94.     US Bank as Trustees and their servicers, et al, via Pass-Through Certificates, violated FDCPA by using false, deceptive, and/or misleading representations and/or means in connection with the collection of the US Bank as Trustees and their servicers, et al account obligation, 5 U.S.C. section 1692(e).

95.     US Bank as Trustees and their servicers, et al, were involved in other fraudulently activity against Plaintiff by not validating the debt after receiving numerous debt validation letters.

96.     Said Defendant's violated FDCPA by falsely representing the character, amount, and/or legal status of the US Bank as Trustees and their servicers, et al account obligation. 15 U.S.C. section 16923(2)(A),

97.     Said Defendant 's violated FDCPA by using a false representation or deceptive means to attempt to collect the US Bank as Trustees and their servicers, et al account obligation; an obligation that may not be theirs. 15 U.S.C. section 1692e(i0).

98.     Said Defendants violated FDCPA by attempting to collect an amount (including interest, fees and charges as early as 2019) not expressly authorized by any agreement creating the US Bank as Trustees and their servicers, et al account obligation or permitted by law, 15 U.S.C. section 192f (1).

## THIRTEENTH   CAUSE OF ACTION

## THE BALANCING OF EQUITIES FAVORS ISSUANCE OF THE TRO

99.     Plaintiff restates, realleges, and incorporates by reference into this paragraph each and every allegation contained in paragraphs 1-98 above, as if set forth fully herein.

100.   Under Colorado law, this Court may grant a Temporary Restraining Order/ Interlocutory Injunctive Relief.

Lender and Servicer Defendants have threatened foreclosure and there is the potential that the subject property could be sold to a third party during the pendency of this Action. Plaintiff has no adequate remedy at law.

101.    Plaintiff is facing foreclosure on Jan.15, 2025. Plaintiff seeks a temporary and permanent Restraining Order to bar Defendant from proceeding with a judicial foreclosure sale until this case has been concluded in Bankruptcy court.

102.    Foreclosing and evicting on Plaintiff's home without allowing a full determination on the merits of Plaintiff's claim will cause irreparable injury to Defendant and cause substantial harm far outweighing the potential injury to Defendant the TRO be granted. Plaintiff is facing imminent loss of property by being wrongfully evicted while a wrongful foreclosure lawsuit is being litigated.

103.    Plaintiff's home is unique and non-fungible. In addition to being the Plaintiff's nest egg for retirement, it is a farm as well as a people and animal sanctuary where memories, both good and bad are made. Home defines who we are, what we were and what we can be. There are no two homes alike. Allowing Lender Defendants to pursue foreclosure while Plaintiff's case is pending deprives Plaintiff of all this, and more. Without a home, Plaintiff will not be able to fully and adequately prosecute the claims against Defendants and in turn, allows Defendants to continue their nefarious, predatory practices against Plaintiff and others similarly situated.

104.    Defendant, on the other hand, will not lose anything upon issuance of the TRO.

Should this Court issue the TRO and should Plaintiff not prevail in the underlying cause of action, any monetary harm that Defendant may incur can and will be made whole through the accumulation of interest and penalties which will be assessed against Plaintiff during the term of the TRO.

## **ARGUMENT**

105.    Plaintiff relief to avoid the denial of justice and resulting hardship of foreclosing and eventually evicting, serving as Plaintiff's workplace and primary home. Central to these matters is the fact that Defendants engaged in a series of predatory and bad faith actions and omissions enabling them to steal Plaintiffs' home.

106.    Defendant repeatedly gave misinformation, concealed their true intent, and misled Plaintiff, as detailed extensively in the complaint initiating this action. To allow Defendant to abuse the courts' authority in order to finalize their theft before an appeal can properly be heard would be a complete denial of justice.

107.    Accordingly, Plaintiff seeks consolidation of this matter with the closely-related unlawful detainer action.

108.    ***Consolidation of wrongful foreclosure and unlawful detainer is both common and necessary to fully litigate title of the property***.

109.    The granting or denial of a motion to consolidate rests in the sound discretion of the trial court. Where an independent civil suit raises title issues, courts may order it consolidated with a simultaneously pending unlawful detainer.
This is because where a prior owner prevails on a claim of title, it will defeat the buyer's right to recover possession of the premises.

110.    Here, there is clear reason to consolidate this matter with the closely-related unlawful detainer action to ensure full litigation of title. Further, refusal to consolidate the unlawful detainer with an affirmative wrongful foreclosure suit as in this instance has been held to unlawfully prejudice the former owner

111.    The Judge of the Court may stay the execution of a judgment or order. Code of Civil Procedure Section 918 (a). In situations where justice requires a stay of execution, the court may stay execution for a period which extends for 10 days beyond the last date on which a notice of appeal could be filed. Code of Civil Procedure Section 918 (b). ***Furthermore, special circumstances such as hardship, which exist in this case, should be considered in granting a temporary stay of execution in an unlawful detainer case***.

112.    Here, this case presents three key special circumstances that require a temporary stay to be issued. **First**, and foremost, Defendants' disingenuous and predatory actions are tantamount to theft. Justice would be deeply harmed if the eviction were to be executed before the merits of this case can be adequately adjudicated. **Second,** the present matter would ultimately resolve issues of title and thus eliminate any right of the buyer to take possession of the property ever. And **third**, the underlying summary judgement which gives rise to the forfeiture and lockout is unlikely to survive appeal.

113.    Stay is proper where there is a likelihood that Plaintiff will prevail on the merits of their appeal of the summary in the unlawful detainer action. Summary judgement is not proper where there are triable issues of fact.

114.	The question of whether an individual is or should be treated as a tenant rather than a trespasser is a triable issue of fact, and summary judgement is improper where the individual in question is or should be treated as a tenant for purpose of an unlawful detainer action.

115.	Here, the unlawful detainer court failed to consider the properly raised issue that Plaintiff should be treated as a tenant rather than a trespasser. Thus, Plaintiffs have a very high likelihood of success on the merits of their appeal of summary judgement, ultimately removing the efficacy of judgement currently pending execution.

## CONCLUSION

116.	For the foregoing reasons, Plaintiff respectfully requests his Motion be granted, that the case be consolidated, relief from forfeiture be granted and the pending lockout stayed. Plaintiff shows a high likelihood of success on the merits:

117.	First, the foreclosure should never have happened based on a failure to grant Plaintiff a streamlined loan modification or time to sell part or all of the property.

118.	Second, Plaintiff has had numerous investors and home buyers provide Letters of Intent whose interest cooled due to the unresolved issues in the Bankruptcy. Yet, a qualified purchaser is willing to purchase said property for $825,000 for each of two parcels with an offer of $5.25 million for the entirety of property without a listing. The same broker-realtor opines with an MLS public listing the property could be sold for $6.1 million. It's foreclosure auction value according to Zillow is $2.2 million and little to no arrears would be recovered.

119.   Third, there's a clearly provable break in the chain of title and no valid assignment. A foreclosure sale without proof of who has standing and allonges on note plainly exists. The Plaintiff's mortgage was a securitized loan which the Defendant's servicer will not provide who that party is.

120.   The assignments in question are void based on lack of authority among other things of Plaintiff's loan servicer who acted in dual capacity as assignor and attorney-in-fact for the lender *(conflict of interest)* and duel tracking the issues of foreclosure while in forbearance while a loan modification was pending.

121.   Also, the void Notice of Default acted as a cloud on title which would restrict assignment. The third-party investor Defendant should be held in check by a temporary restraining order until the Motion for Consolidation is ruled upon.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in their favor and against said defendants, pursuant to FDCPA, 15 U.S.C. section 1602k(a), as follows:

1. The foreclosure stay be extended immediately and remain so until the Court makes a final ruling.
2. Actual damages, including, but not limited to, costs and attorney's fees to defend the collection matter.
3. From each said Defendant, statutory damages according to proof of $2,000,000;
4. For an award of compensatory damages according to proof but in an amount not less than $500,000 in favor of Plaintiff

5. An amount not to exceed the lesser of $500,000.00 or 1% of the net worth of such Defendant; and costs of this action and reasonable attorney fees.

6. For an award of provable punitive and exemplary damages;

7. For an award of attorneys' fees;

8. For interest at the maximum legal rate from and after the filing date to the date of judgment;

9. For injunctive relief preventing the transfer of the Property to the winner of any auction;

10. For the costs of repairing Plaintiff 's credit and any such injunctive or declaratory relief as needed to ensure Defendants undertake any actions necessary to achieve such repair;

11. For costs of suit herein; and

12. For such other relief as the court may deem just and proper.

13. For such other relief as the court may deem just and proper.

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Dated: Jan 20, 2025

Respectfully submitted,

By: _____

*CARL LLOYD SHEELER*

The Petitioner Plaintiff is aware a complaint can be filed with exhibits provided afterwards and is aware. doing so strengthens his case by providing supporting evidence. The Plaintiff intends to supplement the complaint/TRO with additional findings and exhibits this week and as needed.

# IN THE UNITED STATES DISTRICT COURT FOR THE SIXTH JUDICIAL DISTRICT

## STATE OF COLORADO , CIVIL DIVISION

CASE  NO -

**CARL LLOYD SHEELER**

**PROPOSED ORDER**

      **Plaintiff**


**U.S. BANK, NATIONAL ASSOCIATION**
**AS TRUSTEE OF CABANA SERIES V TRUST ("CABANA")**
**AS TRUSTEE OF VRMTG ASSET TRUST ("VRMTG")**
**SHELLPOINT SERVICER FOR THE TRUSTS**
**SECURITY NATIONAL SERVICING NATIONAL CORPORATION ("SNSC")**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEM ("MERS")**
**RELIABLE LENDING SERVICES, LLC ("RELIABLE")**
**ALPINE BANK**
**ET AL**
      **Defendants**

PROPOSED ORDER

**This matter, having come before the United States District Court Sixth District, State of Colorado rules as follows:**

**[ ] Granted**

**[ ] Denied**

**As of January \_\_\_, 2025.**

**Judge,**