Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Colorado [▼]

_____ Division

| | |
|---|---|
| CARL LLOYD SHEELER, | Case No. 1:25-cv-00203-CMA-RTG |
| | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* [✔] Yes [ ] No |
| -v- | |
| U.S. BANK, Trustee of Cabana Series V & of VRMTG; SHELLPOINT/SLS/SNSC - Servicers for the Trusts Erik Palmer/Brock Properties Beta, LLC La Plata County Public Trustee | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR A CIVIL CASE

### I.  The Parties to This Complaint

#### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Carl Lloyd Sheeler |
| Street Address | 2725 County Road 250 |
| City and County | Durango,La Plata |
| State and Zip Code | Colorodo  81301 |
| Telephone Number | (970) 759-5083 |
| E-mail Address | carl@carlsheeler.com |

#### B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1**

| | |
|---|---|
| Name | U.S. Bank, Trustee for VRMTG Asset Trust |
| Job or Title *(if known)* | Part of CM/ECF |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 2**

| | |
|---|---|
| Name | U.S. Bank Trustee for Cabana Series V |
| Job or Title *(if known)* | c/o Heather Gram-Chavez, Esq.  Ghidotti Berger |
| Street Address | 1920 Old Tustin Avenue |
| City and County | Santa Ana Orange |
| State and Zip Code | California  92705 |
| Telephone Number | 949-427-2010 |
| E-mail Address *(if known)* | hchavez@ghidottiberger.com |

**Defendant No. 3**

| | |
|---|---|
| Name | Shellpoint/Specialized Loan Servicing/SNSC |
| Job or Title *(if known)* | See Defendant #1 above (USBank VRMTG-Shellpoint/SLS) |
| Street Address | See Defendant #2 above (USBank Cabana-SNSC/SLS) |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

**Defendant No. 4**

| | |
|---|---|
| Name | Eric Palmer/Brock Properties Beta, LLC |
| Job or Title *(if known)* | c/o Ryan Brungard, Esq. DSB |
| Street Address | 1010 Main Avenue |
| City and County | Durango La Plata |
| State and Zip Code | Colorado 81301 |
| Telephone Number | 970-247-4545 |
| E-mail Address *(if known)* | rbrungard@trialdurango.com |

Defendant No. 5   Ann Monica Grushkin, La Plata County Public Trustee
679 Turner Drive, Suite B
Durango, CO 81303
970-382-6352   eforeclosures@lpcgov.org

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

[✔] Federal question                    [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
VIOLATION OF RESPA (12 U.S.C. § 2605)
VIOLATION OF FDCPA (15 U.S.C. § 1692 et seq.)

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual
   The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

   b.    If the plaintiff is a corporation
   The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,
   and has its principal place of business in the State of *(name)*
   _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual
   The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

Page 3 of 5

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

    b.    If the defendant is a corporation

        The defendant, *(name)* _____ , is incorporated under

        the laws of the State of *(name)* _____ , and has its

        principal place of business in the State of *(name)* _____ .

        Or is incorporated under the laws of *(foreign nation)* _____ ,

        and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

        The amount at stake is +$6 million. The aggregate value of the disputed properties based upon loss from each bad act(s) and opportunity costs.

        The amount in Controversy is +$10 million. The damages as a result of fraud on the court and violations of numerous Federal and State statutes.

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

ATTACHED HEREIN AS EXHIBIT A

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

a. A declaratory judgment that Defendants' foreclosure and eviction actions were unlawful, including actions taken while Plaintiff's mortgage relief applications were pending in violation of federal law.
b. A preliminary and permanent injunction barring Defendants from enforcing the demand for possession or proceeding with Plaintiff's eviction, due to the ongoing nature of the alleged wrongful foreclosure and loan servicing misconduct.

c. Compensatory damages in an amount exceeding $2,000,000 per act for financial losses, damage to credit, wrongful foreclosure-related fees and costs and severe emotional distress caused by Defendants' actions.
d. Punitive damages in an amount to be determined at trial, to punish Defendants for willful, malicious, and fraudulent conduct, and to deter similar future misconduct.
e. Attorney's fees and litigation costs, where permitted by law.
f. Any other and further relief the Court deems just, proper, and necessary to prevent irreparable harm and to restore Plaintiff's rights and property.

## V.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:              05/30/2025

Signature of Plaintiff

Printed Name of Plaintiff    CARL LLOYD SHEELER, Pro Se

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

# EXHIBIT A

## III. STATEMENT OF CLAIM

### FACTUAL ALLEGATIONS

1.      Plaintiff Carl Lloyd Sheeler is the rightful owner and resident of the real properties located at 2725 CR 250, 2721 CR 250, 2671 A&B and adjacent parcel in La Plata County, Colorado **(Exhibit A – Deeds and Property Records).**

2.      Access to the 2725 property requires crossing through the 2671 property, which has no recorded easement, effectively rendering the 2725 property landlocked unless Plaintiff retains access and possession.

3.      Plaintiff has continuously resided at the Property as his homestead since 2016 and holds valid possessory and ownership interests.

4.      Plaintiff Carl Lloyd Sheeler obtained a mortgage loan for the properties located at 2725 and 2671 County Road 250, Durango, Colorado 81301 **(Exhibit B – Mortgage Agreement and Loan Statements).**

5.      Plaintiff is informed and believes, and thereon alleges, that the subject mortgage loan was subsequently transferred and allegedly securitized into a trust titled the "VRMTG Asset Trust," with U.S. Bank, National Association, purportedly acting as Trustee.

6.      However, the chain of custody of the mortgage note into the VRMTG Asset Trust remains unverified. There is no publicly recorded assignment or transfer of the note and deed of trust demonstrating a complete, continuous, and lawful chain of title into the trust. The Plaintiff has not been provided with any Pooling and Servicing Agreement (PSA), loan schedule, or other competent evidence substantiating the alleged securitization into VRMTG Asset Trust.

7.      Moreover, independent expert analysis, including records accessed via Bloomberg Terminal and the Mortgage Electronic Registration System (MERS), using the corresponding MERS Mortgage Identification Number (MIN), confirm that **Wilmington Trust** was the last known verified custodian of the mortgage loan. This undermines any assertion that VRMTG ever

# EXHIBIT A

obtained proper legal standing or ownership interest in the note.

8.      Plaintiff further alleges, upon information and belief, that a separate loan exists, collateralized through an entity known as **Cabana Series V**, which also purports to claim a security interest in the subject property located at **2671 A & B**. The documentation relating to the Cabana Series V transaction has not been fully disclosed, and its legal relationship—if any—to the original mortgage loan remains ambiguous and potentially clouding to title.

9.      These competing and conflicting claims raise significant concerns regarding potential bifurcation of the note and deed of trust, improper securitization practices, and the possibility of unlawful or fraudulent attempts to enforce the mortgage loan by entities lacking standing

10.     Plaintiff did not receive timely or complete notice of the transfer of ownership or servicing rights of his mortgage loan, as required by 12 U.S.C. § 2605 (RESPA) and 15 U.S.C. § 1641(g) (TILA).

11.     Although some notices were eventually issued, they lacked key details and were delayed, causing confusion about who owned the loan and who serviced it.

12.      Public records show that assignments involving VRMTG Asset Trust and Wilmington Savings Fund Society were recorded on the same date, raising questions about whether the transfers were backdated or improperly executed.

13.     These questionable filings appear designed to retroactively establish standing and ownership after foreclosure proceedings had already begun.

14.     This failure to notify Plaintiff of the transfer and servicing changes created confusion regarding loan terms, payment obligations, and the correct party for loss mitigation inquiries

15.      At various times, Plaintiff's loan was serviced by Shellpoint Mortgage Servicing, Specialized Loan Servicing (SLS), and SNCS, a servicing company.

16.      Each of these servicers failed to provide accurate, timely, or transparent information regarding Plaintiff's account and servicing status as well as reply to written requests for information mandated under RESPA to be fully addressed and answered within 30 days or less. .

# EXHIBIT A

17.    Transitions between mortgage servicers and lenders were not adequately disclosed or explained to Plaintiff, violating the notice and disclosure requirements of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(b)–(d).

18.    Most notably, Plaintiff did not receive the mandatory written notice confirming the end of his COVID-19 forbearance in or around September 2021, as required by 12 C.F.R. § 1024.41(e)(5), nor was he provided the streamlined loan modification opportunity mandated under federal guidance from the Consumer Financial Protection Bureau (CFPB).

19.    This omission deprived Plaintiff of automatic eligibility for post-forbearance loss mitigation and contributed to unnecessary interest accrual and substantial equity loss each month thereafter.

20.    These harms were further compounded by questions surrounding the lenders' legal standing due to inconsistent or backdated assignments

21.    In 2020 and 2021, Plaintiff submitted multiple applications for mortgage relief pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. § 9056, and related federal guidance, in response to financial hardship caused by the COVID-19 pandemic.

22.    Under the CARES Act, Plaintiff was entitled to an initial forbearance period upon affirming a COVID-19–related financial hardship by phone, which Plaintiff did in or around March 2020. No documentation was required beyond this attestation.

23.    This forbearance was automatically granted and extended under federal law, requiring servicers to pause foreclosure actions and suspend adverse credit reporting during the covered period.

24.    Despite Plaintiff's eligibility for and invocation of COVID-19 forbearance protections under the CARES Act, Defendants U.S. Bank (as Trustee for VRMTG), Cabana Series V Trust, and their servicers—Shellpoint, SLS, SNSC, Reliable, and Alpine Bank—improperly treated Plaintiff's loan account as delinquent and in default.

# EXHIBIT A

25.     Plaintiff did not receive written confirmation of forbearance approval from several of the servicers and lenders, including Alpine Bank and Reliable, despite submitting timely requests.

26.     Monthly mortgage statements from Shellpoint and other servicers expressly stated that COVID-19 forbearance was available, but Plaintiff's requests were either ignored or mischaracterized, resulting in negative credit reporting and wrongful default designations.

27.     From 2020 through 2024, VRMTG engaged in dual tracking by initiating foreclosure proceedings under Colorado Rule 120 while simultaneously representing that Plaintiff was eligible for COVID-19 forbearance. Multiple court filings during this period addressed issues of foreclosure, delinquency, and default. Despite forbearance eligibility, most lender and servicer communications demanded a lump-sum payment to cure the loan, contradicting the terms of forbearance.

28.     These applications included formal written requests for forbearance and streamlined loan modification, submitted through the channels required by Shellpoint/SLS and SNSC.

29.     Despite timely submission of all required information, Shellpoint/SLS and SNSC failed to acknowledge, review, or make a timely determination on Plaintiff's requests.

30.     On several occasions, Shellpoint and SLS told Plaintiff his mortgage relief requests were "under review," only later to claim the applications were denied or never received. This pattern shows Plaintiff's consistent, proactive efforts contrasted with the servicers' inconsistent, negligent, or absent responses over multiple years.

31.     These contradictory, misleading actions and inaction caused Plaintiff to rely on inaccurate information which delay and detriment created an impossibility to seek better assistance from a new lender/servicer to his detriment.

32.     While Plaintiff had every belief the lender/servicer were overwhelmed by the pandemic related demands he had every reason to believe based upon his monthly mortgage statements that forbearance was in place.

# EXHIBIT A

33.     As an example, for all of 2020 and 2021 he received robocalls as much as 3 times **daily, weekly, monthly** if he had not received forbearance, it only required a call to obtain forbearance. Yet, contemporaneously foreclosure activity was initiated by U.S. Bank, as Trustee, as well as Reliable in coordination with servicers Shellpoint, SLS, and SNCS.

34.     The initiation of foreclosure while Plaintiff's forbearance existed or streamlined loan modification requests constituted a violation of the prohibition against dual tracking under 12 C.F.R. § 1024.41(g).

35.     First SLS then SNCS carried out foreclosure-related actions against Plaintiff on behalf of US Bank Cabana Series V Asset Trust despite Plaintiff's forbearance status and his requests for the streamlined loan modification which went unanswered causing great emotional and financial impact as the delays month after month reduced his home equity while remaining eligible for the federal relief programs.

36.     These actions were premature, not legally authorized, and contributed to the wrongful initiation of foreclosure proceedings against Plaintiff beginning from 2020 through and including the present and has led to the wrongful foreclosure of his home and pending eviction.

37.     On December 19, 2024, at a hearing, VRMTG's counsel claimed that Plaintiff failed to request forbearance or did not complete the application process. However, when presented with evidence disproving these claims, counsel conceded they were untrue. Despite this, the court granted relief from the automatic stay, failing to recognize the significance of Plaintiff's forbearance. As a result, any foreclosure action after March 2020 is invalid.

38.     In support of this motion, VRMTG knowingly and falsely represented to the Bankruptcy Court that no forbearance had ever been granted.

This was later contradicted during oral argument, when VRMTG's attorney admitted to the existence of a COVID-19 forbearance.

39.     On March 5, 2025, the La Plata County Public Trustee conducted a foreclosure auction of

# EXHIBIT A

the Subject Property based on affidavits and documents submitted by VRMTG. Plaintiff did not receive the statutorily required notice of the sale from the Public Trustee, nor was there adequate public notice as required by **Colo. Rev. Stat. § 38-38-101(1)(a)** and **Colo. Rev. Stat. § 38-38-101.5**, which govern notice of foreclosure sales.

40.      The auction was held only 76 days after the lifting of the automatic stay, significantly less than the 230 days Plaintiff was entitled to under **Colo. Rev. Stat. § 38-38-101(8)**, which provides extended timelines for agricultural properties to protect agricultural owners from rushed foreclosure sales.

41.      The auction resulted in a single bidder acquiring the property for approximately $2.7 million, substantially below the appraised value of $3.3 million, causing Plaintiff a significant financial loss.

42.      The Public Trustee failed to confirm that VRMTG had standing to foreclose, and did not require indemnification in the event of a wrongful foreclosure or defective assignment of the deed of trust.

43.      Plaintiff's property is classified as agricultural land as defined under Colorado law. Pursuant to Colorado Revised Statutes § 38-38-105(2), properties designated as agricultural are entitled to extended procedural protections in non-judicial foreclosure proceedings which includes a significant redemption right AFTER auction for six months.

44.      The Public Trustee further failed to provide Plaintiff with the notice required under Colorado law for agricultural properties, including the mandatory 230-day pre-sale notice and the 6-month post-sale redemption period, both of which apply to farm properties such as the Subject Property **(Exhibit C– Agricultural Status Certification and Notice Timeline). Failing to provide the required days before auction voids the sale.**

45.      The foreclosure auction resulted in a sale to Defendant Erik Palme via two entities Brock Properties Beta, LLC and Briarhurst H2, LLC, a Texas-based real estate investor/agent who was

# EXHIBIT A

the sole bidder at the foreclosure sale.

46.     Palmer acquired the Subject Property at a price that satisfied VRMTG's note (~$2.6 million) but was approximately +$600,000 below its own stipulated value, resulting in unjust enrichment to VRMTG and substantial equity loss to Plaintiff. This is because the delays from 2020 to the present means less equity for the Debtor but more arrears paid to the lender.

47.      Upon information and belief, Defendant Palmer had prior or insider knowledge of the foreclosure and obtained the property under circumstances that suggest collusion, bad faith, or constructive fraud.  As a minimum being a seasoned real estate investor due diligence would mandate determining whether USBank VRMTG was the rightful holder of an original wet signature note (not a "certified" copy) and the possession of an allonge affixed to the note, which in this case neither were provided).  Absence of due diligence to determine there is no easement to pass through 2671 A&B CR 250 to get to 2725/2721 CR 250.  There is a further issue to include the water rights were not acquired.

48.     Palmer has since taken steps to unlawfully evict Plaintiff and tenants at 2721 CR 250, despite the existence of lease agreements, active appeals, and unresolved issues related to access and water rights **(Exhibit J Eviction Attempts County case court)**.

49.     The property Palmer acquired is landlocked and cannot be accessed without traversing the 2671 parcel, which remains in dispute and was part of Plaintiff's farm operations to include a barn and 90-year-old heirloom apple orchard.

50.     Palmer did not acquire any easement or access rights, nor did he secure water rights necessary to support any legal use of the land, calling into question the legitimacy of the foreclosure purchase. (However, he entered into a purchase of $5 million+ judicial lien agreements by paying $10,000 to BRG and $6,000 to RPA/ECG.

51.     It is the plaintiff position Palmer/Brock entering into such agreements nullifying their argument in the eviction hearing the Debtor inquiry could only be about why the Bidder should be

# EXHIBIT A

prohibited to move forward with the eviction.

52. Palmer is also attempting to evict tenants at 2721 CR 250 without observing proper notice procedures, lease protections, or due process.

53. These actions further harm Plaintiff's business and tenants and were made possible only by the unlawful foreclosure.

54. As a result of the above conduct by Defendants, Plaintiff has suffered and continues to suffer irreparable harm, including loss of real property, loss of business income, damage to credit, emotional distress, and the imminent threat of eviction and trespass from property lawfully in Plaintiff's possession and use.

## CLAIMS FOR RELIEF

**COUNT I – Violation of the Real Estate Settlement Procedures Act**

**(RESPA), 12 U.S.C. § 2605**

*(Against Defendants: Shellpoint Mortgage Servicing, Specialized Loan Servicing (SLS), and U.S. Bank, N.A., as Trustee of VRMTG Asset Trust)*

55. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

56. Plaintiff's mortgage loan was serviced at various times by Shellpoint Mortgage Servicing and Specialized Loan Servicing (SLS), and was held in the VRMTG Asset Trust for which U.S. Bank, N.A. serves as Trustee.

57. Plaintiff made proactive requests for mortgage relief and loss mitigation, including loan modification and forbearance, beginning in January 2020 and 2021, in accordance with the CARES Act and applicable federal guidelines.

58. Defendants Shellpoint, SLS, and VRMTG, through their roles as servicers and Trustee,

# EXHIBIT A

violated RESPA by failing to provide timely, complete, and accurate responses to Plaintiff's qualified written requests and inquiries regarding the mortgage account, in violation of 12 U.S.C. § 2605(e) and related implementing regulations under 12 C.F.R. § 1024.36 and § 1024.41.

59.    Plaintiff submitted all required documentation for review, but Defendants repeatedly misrepresented the status of Plaintiff's applications—stating at various times that they were "in review," "denied," or "never received"—despite confirmed submissions.

60.    Defendants failed to provide written notifications of the receipt of Plaintiff's loss mitigation requests, and accept on one occasion failed to notify Plaintiff of any deficiencies or missing information within the timeframes required under RESPA and Regulation X; particularly requests for streamlined loan modification when his federal forbearance would have ceased in September 2021.

61.    Defendants failed to assign a single point of contact, failed to provide proper appeal procedures, and failed to disclose their determinations in writing, all of which are required under RESPA and its regulations.

62.    While Plaintiff's forbearance had been granted or under review, Defendants Shellpoint, SLS, and U.S. Bank VRMTG moved forward with initiating foreclosure proceedings as early as April 2020.

63.    This conduct constituted impermissible dual tracking in violation of 12 C.F.R. § 1024.41(g), which prohibits initiating or proceeding with foreclosure while a loss mitigation is pending and not resolved.  These acts are worsened as the lenders lacked standing to do so.

64.    Plaintiff was unaware foreclosure had commenced until he received summons from the lender/servicer attorney and notification from the La Plata County Public Trustee and was not provided any lender/servicer notice the forbearance had ended which is mandated to be in writing.

65.    As a direct and proximate result of Defendants' violations of RESPA and Regulation X, Plaintiff suffered actual damages, including but not limited to:

# EXHIBIT A

a. Incurring unnecessary foreclosure-related fees and costs;

b. Damage to credit reputation and score;

c. Loss of opportunity to secure timely mortgage relief or retain his property under fair terms;

d. Time, effort, and resources spent responding to conflicting or misleading notices;

e. Emotional distress, anxiety, and financial insecurity caused by facing foreclosure without accurate or complete information.

66.     Defendants' conduct was willful and reckless, and entitles Plaintiff to recover statutory damages, actual damages, and reasonable attorneys' fees and costs pursuant to 12 U.S.C. § 2605(f).

**COUNT II – Violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq.**

*(Against Defendants: Shellpoint Specialized Lending Services and SNSC)*

67.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

68.     At all relevant times, Defendants Shellpoint Mortgage Servicing/SLS and SNCS (collectively, "Debt Collector Defendants") acted as "debt collectors" within the meaning of 15 U.S.C. § 1692a(6), in that they regularly collect or attempt to collect debts allegedly owed to another.

69.     Plaintiff's mortgage loan was treated as in default at the time it was assigned for servicing and/or collection by Defendants; especially as the Defendants had no standing.

70.     Defendants engaged in collection activity related to Plaintiff's mortgage debt, including but not limited to sending payment demands, issuing default notices, and initiating or threatening foreclosure proceedings.

71.     Defendants violated 15 U.S.C. § 1692e, including § 1692e(2)(A), by misrepresenting the amount, legal status, and character of the alleged debt. Specifically:

# EXHIBIT A

a. Defendants demanded payment amounts that were not accurate and did not reflect lawful balances due under Plaintiff's loan.

b. Defendants failed to itemize or categorize amounts owed, concealing inflated charges and erroneous calculations.

c. Plaintiff was repeatedly misled about his loan status, and was falsely informed he was ineligible or his requests were incomplete, despite submitting necessary documentation.

72.    Defendants violated 15 U.S.C. § 1692f(1) by collecting or attempting to collect amounts not expressly authorized by the loan agreement or permitted by law.

  a. These amounts included late fees, foreclosure-related charges, and servicing penalties imposed while Plaintiff was actively applying or receiving relief under the CARES Act and other programs.

  b. Plaintiff was penalized even when payment forbearance was in good faith and in accordance with Defendants' own communications.

73.    Defendants misrepresented Plaintiff's rights and options under applicable federal mortgage relief programs, including but not limited to falsely stating that Plaintiff was not eligible for forbearance or streamlined loan modification.

 a. These communications created the false impression foreclosure was imminent and unavoidable, when in fact Plaintiff still had active forbearance and believed by September 2021 he would be notified a streamlined loan modification was the next step after forbearance.

 b. These false representations were made knowingly or recklessly, in violation of 15 U.S.C. § 1692e and § 1692f.

74.    At no time did Defendants provide Plaintiff with a complete and accurate notice of debt validation rights, and they failed to respond properly to Plaintiff's qualified written disputes and inquiries as required under 15 U.S.C. § 1692g.

75.    As a direct and proximate result of Defendants' violations of the FDCPA/TILA, Plaintiff suffered the following injuries:

# EXHIBIT A

a.  Plaintiff endured stress, anxiety, and mental anguish due to receiving repeated and conflicting communications and the fear of wrongful foreclosure.

b.  Plaintiff incurred costs due to unnecessary and premature foreclosure activity.

c. Defendants' unlawful conduct negatively affected Plaintiff's credit rating, causing difficulty in obtaining credit and worsening Plaintiff's financial hardship.

# EXHIBIT A

76.     Plaintiff is entitled to actual damages, statutory damages and attorneys' fees and costs pursuant to 15 U.S.C. § 1692k.

**COUNT III – Unjust Enrichment**

*(Against Defendants: U.S. Bank, Shellpoint Mortgage Servicin/SLSg, and SNCS)*

77.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

78.     At all relevant times, Defendants U.S. Bank, Shellpoint/SLS, and SNCS (collectively, "Defendant") collected, sought to collect and retained funds from Plaintiff under circumstances that make their retention of such funds unjust and inequitable.

79.     Defendants imposed and demanded lump sum arrear payments fees and costs that were not legally due under Plaintiff's mortgage agreement or applicable state and federal law. These included:

a. Excessive foreclosure-related charges despite having no standing to pursue foreclosure;

b. Misapplied/miscategorized mortgage payments that caused unnecessary arrears and accrual of additional fees; and

c. Charges for foreclosure actions initiated while Plaintiff's application or existence of mortgage in violation of 12 C.F.R. § 1024.41(g) (prohibition against dual tracking).

80.     Defendants actions resulted in the unjust accrual of penalties, late fees, and interest charges not contractually or legally authorized.

81.     Defendants knowingly demanded funds while Plaintiff was actively in or seeking seeking relief under the CARES Act and other federal mortgage assistance programs, and while Defendants were under a legal duty to properly service the loan and refrain from foreclosure activity during the review/forbearance period.

82.     The monies requested by Defendants were not due under the terms of the mortgage loan, nor authorized by applicable law.

# EXHIBIT A

Plaintiff did not voluntarily consent to demanded payment of such expenses with full knowledge of the facts, and Defendants had no legal justification or equitable basis to retain them.

83.    As a result of this conduct, Defendants were unjustly enriched at Plaintiff's expense due to arrears it calculated up to and including March 5, 2025 which it sought and received that rightfully belong to Plaintiff had the streamlined loan modification had been offered as of September 2021.

84.    Plaintiff has suffered financial harm due to Defendants' conduct and seeks the following relief:

a. Disgorgement and restitution of all illegal fees, costs, and misapplied funds wrongfully retained by Defendants;

b. A full accounting of all sums collected by Defendants in connection with the foreclosure proceedings and loan servicing; and

c. Such other relief as the Court deems just and equitable.

**COUNT IV – Intentional Infliction of Emotional Distress**

*(Against Defendants: U.S. Bank, Shellpoint Mortgage Servicing, and SNCS)*

85.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

86.    Defendants U.S. Bank, Shellpoint/SLS and SNCS engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, severe emotional distress to Plaintiff, Carl Lloyd Sheeler. Worsened by their lack of standing.

87.    Despite Plaintiff's good-faith efforts to obtain mortgage relief under the CARES Act and other federally sponsored programs, Defendants willfully:

a. Ignored or improperly processed Plaintiff's arrears and timely mortgage relief requests;

b. Initiated and continued foreclosure proceedings as early as his April 2020 forbearance period when the global pandemic had yet to reach its zenith a violation of 12 C.F.R. § 1024.41(g), which prohibits "dual tracking";

# EXHIBIT A

c. Provided false, misleading, or incomplete information regarding eligibility and deadlines for mortgage relief; and

d. Created confusion, fear, and uncertainty for Plaintiff about his housing status despite his compliance with program requirements.

88.     These actions were not only unlawful but so extreme and outrageous in character as to exceed all bounds of decency in a civilized society. Defendants' conduct was calculated to inflict maximum pressure on Plaintiff during a vulnerable period and was grossly indifferent to Plaintiff's emotional and financial well-being.

89.     Defendants knew or should have known that their conduct would cause Plaintiff to suffer severe emotional distress. Their continued pursuit of foreclosure—despite Plaintiff's eligibility and receipt of relief and active participation in government programs—demonstrates a reckless and malicious indifference to Plaintiff's rights, emotional health, and financial stability.

90.     Defendants' conduct was intended to coerce or intimidate Plaintiff into liquidating his home in the midst of the global pandemic by abandoning his legal rights, or was carried out with such recklessness as to make the resulting emotional harm entirely foreseeable.

91.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

a. Severe emotional distress, including but not limited to anxiety, fear, depression, sleeplessness, and mental anguish for which he has seen a licensed psychologist since 2020 to present;

b. financial losses, including but not limited to legal fees, costs associated with defending against foreclosure, harm to credit and missed financial opportunities; and

c. A profound disruption to his personal and financial life due to the imminent and wrongful threat of losing his home.

92.     Plaintiff is entitled to compensatory damages for emotional distress and related financial harm. Due to the egregious and malicious nature of Defendants' conduct, Plaintiff seeks punitive damages to punish Defendants to deter the conduct by mortgage servicers and lenders in the future.

# EXHIBIT A

## COUNT V – WRONGFUL FORECLOSURE

*(Against: Public trustee, U.S. Bank, Shellpoint Mortgage Servicing/SLS, SNCS)*

93.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94.     Defendants wrongfully initiated and proceeded with foreclosure against Plaintiff despite Plaintiff's timely submission of a complete loan modification package and requests for forbearance pursuant to the **Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020)**, and federal regulations including **12 C.F.R. § 1024.41(g)** (Regulation X - Real Estate Settlement Procedures Act), which prohibit foreclosure during authorized forbearance periods.

95.     Defendants lacked legal authority and standing to foreclose because Plaintiff was not in default under the federally mandated forbearance program designed to protect borrowers during the COVID-19 pandemic. Defendants' actions violated the CARES Act and its implementing regulations by failing to honor the required forbearance protections, thereby acting in bad faith.

96.     Defendants disregarded their legal obligations by:

a. Ignoring or improperly evaluating Plaintiff's mortgage relief requests;

b. Initiating and continuing foreclosure proceedings during a legally protected forbearance period in violation of the **CARES Act**, **12 U.S.C. § 5201 et seq.**, and **12 C.F.R. § 1024.41**;

c. Allowing the Public Trustee to conduct a foreclosure sale without providing Plaintiff with the statutorily required notices as mandated by **Colo. Rev. Stat. § 38-38-101** and failing to observe the extended timeline for agricultural properties under **Colo. Rev. Stat. § 38-38-101(8)**; the auction was held only 76 days after the lifting of the automatic stay, significantly less than the 230 days                 and

d. Misrepresenting Plaintiff's loan status and rights during the foreclosure process.

97.     The Public Trustee's role in conducting the foreclosure auction prematurely and without proper notice constitutes wrongful foreclosure under Colorado law and violates Plaintiff's rights

# EXHIBIT A

under the CARES Act and RESPA.

98.    As a direct and proximate result of Defendants' wrongful foreclosure actions, Plaintiff suffered damages including:

a. financial loss from foreclosure-related fees, legal costs, and the diminished property sale price;

b. Harm to Plaintiff's creditworthiness and reputation; and

c. Emotional distress caused by the improper threat and initiation of foreclosure.

99.    Plaintiff seeks compensatory damages, attorneys' fees, restitution of wrongfully charged costs, injunctive relief to void the foreclosure sale, and any other relief the Court deems just and proper

## COUNT VI – FRAUDULENT MISREPRESENTATION

*(Against: U.S. Bank, Shellpoint Mortgage Servicing/SLS, SNCS)*

100.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.    Defendants made knowingly false and misleading statements to Plaintiff concerning his eligibility for and receipt of mortgage relief under the CARES Act and other federal programs. These falsehoods included statements regarding applicable deadlines, required documentation, and the status of Plaintiff's requests. They also failed to verify lenders' standing.

102.    Defendants also intentionally concealed and failed to disclose critical information about Plaintiff's rights and options under federal relief programs. These omissions materially affected Plaintiff's ability to make informed decisions and to take timely action to protect his home.

103.    Plaintiff reasonably relied on Defendants' representations and omissions in attempting to comply with the relief process. Defendants intended for Plaintiff to rely on these misrepresentations in order to proceed with foreclosure despite his eligibility for relief.

104.    As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff sustained the following injuries:

# EXHIBIT A

a. financial losses, including foreclosure-related fees, credit damage, and legal expenses;

b. Emotional distress caused by being misled during a vulnerable time;

c. Delay or loss of relief that Plaintiff was entitled to under the law; and

d. Loss of opportunity to explore alternative options to preserve his home.

105.    Plaintiff seeks compensatory and punitive damages due to Defendants' willful and malicious misconduct, as well as any further relief the Court deems just and proper.

### COUNT VII – WRONGFUL EVICTION / POSSESSION

*(Against Erik Palmer/Brock Properties Beta, LLC)*

106.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    Defendant Erik Palmer claims ownership of Plaintiff's property located at 2725 County Road 250, Durango, Colorado, based on a foreclosure auction held after Plaintiff filed for Chapter 7 bankruptcy protection.

108.    At the time of the foreclosure auction, the automatic stay under 11 U.S.C. § 362 had not yet been lawfully lifted or, alternatively, the stay was lifted only by misrepresentations made to the bankruptcy court by other parties, rendering the auction void or voidable. This is further impacted as the VRMTG lacks standing to have done so. Easily verified by the lenders, the servicers, the Public Trustee and the investor.

109.    Palmer was the only bidder at the foreclosure auction under circumstances that are highly suspect, including lack of proper notice to Plaintiff and the possibility of insider knowledge of the unlawful status of the auction.

110.    Palmer acquired alleged title to the property without water rights, without easements to access other parcels, and while using judgment liens purchased at a discount to cloud title and suppress legitimate bids.

111.    Palmer has since attempted to evict the Plaintiff and his tenants from the property, despite

# EXHIBIT A

knowing or having reason to know that:

a. The foreclosure was unlawful and unlawfully conducted;

b. Plaintiff was deprived of redemption rights available under Colorado law (6-month

redemption period post-auction);

c. The Public Trustee and VRMTG conducted the foreclosure in violation of Plaintiff's due

process rights.

d. Complying with VRMTG to lower the paid amount by $170.50 to reflect a deficient amount.

112.    Defendant's conduct has caused Plaintiff to suffer irreparable harm, including

displacement, emotional distress, and interference with tenant relationships and lease agreements.

## COUNT VIII – QUIET TITLE

(Against Erik Palmer/Brock Properties Beta, LLC)

113.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

114.    Plaintiff asserts a present interest in the property located at 2725/2721 County Road 250

and contiguous parcels, including access rights and water rights.

115.    Defendant Erik Palmer claims an adverse interest in the property based on a foreclosure

auction that was defective and conducted in violation of applicable federal and state laws.

116.    The foreclosure and subsequent trustee's deed purporting to convey title to Palmer were

invalid due to:

a. Lack of standing by the foreclosing party (VRMTG);

b. Improper dual tracking under the CARES Act;

c. Misrepresentations made to the bankruptcy court;

d. Absence of proper notice to Plaintiff under Colorado law.

e. Ignoring the Lis Pendens filed by the Plaintiff and Clouded Title.

f. La Plata County Public Trustee failure to remain neutral and holding an auction in 76 days

versus the 230 days the Plaintiff was eligible.

# EXHIBIT A

117. An actual controversy exists between Plaintiff and Palmer as to the validity of the foreclosure sale and the current rightful owner of the property.

## COUNT IX – VIOLATION OF DUE PROCESS

(*Against the La Plata County Public Trustee*)

118. Plaintiff realleges and incorporates all prior allegations as though fully stated herein.

119. The Public Trustee of La Plata County conducted a foreclosure sale in which:

a. Plaintiff and public were not properly noticed;

b. The trustee failed to verify the foreclosing party had legal standing;

c. No evidence was produced showing lawful ownership of the wet signature promissory note or compliance with the CARES Act;

d. Plaintiff's statutory rights to redemption and forbearance protections were ignored;

e. Notifying VRMTG counsel the Plaintiff was filing a Lis Pendens.

f. Complying with VRMTG to lower the bidder paid amount by $170.50 to reflect a deficient amount.

120. Despite Plaintiff's documented forbearance under federal COVID-19 protections, the Public Trustee failed to follow proper procedures and allowed the sale to proceed.

121. The Public Trustee had an affirmative duty under Colorado law and principles of due process to ensure the foreclosure was valid and that Plaintiff received notice and an opportunity to be heard.

122. As a result of the Public Trustee's actions, Plaintiff suffered deprivation of property without due process in violation of the Fourteenth Amendment to the U.S. Constitution and analogous provisions of the Colorado Constitution.